UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

_____

Reid Brazell Sagehorn,                                     Case No.

          Plaintiff,

   vs.                                                        **COMPLAINT**

Independent School District No. 728;          **JURY TRIAL DEMANDED**
Roman Pierskalla, in his individual capacity as   **UNDER FRCP 38(b)**
Principal of Rogers High School; Mark Bezek,
in his individual capacity as Superintendent of
Independent School District No. 728; Jana
Hennen-Burr, in her individual capacity as
Assistant Superintendent of Independent School
District No. 728; Jeffrey Beahen, in his individual
capacity as Police Chief for Rogers Police
Department; and Stephen Sarazin, in his individual
capacity as a police officer for Rogers Police
Department,

        Defendants.

_____

    For his complaint, plaintiff Reid Sagehorn states as follows:

## JURISDICTION

    1.    This is an action for money damages and other relief arising out of injury and

damage sustained by Reid Sagehorn as a result of the unconstitutional actions of the above-

named defendants in suspending, expelling, and forcing him to withdraw from Rogers High

School for the last four months of his senior year.  Reid is also seeking money damages

against defendant Police Chief Jeffrey Beahen for defamation.

    2.    Plaintiff brings this action pursuant to 42 U.S.C. § 1983 and 1988, the First

Amendment and Fourteenth Amendment to the United States Constitution, and 28 U.S.C. §

1331 and 1343. Those statutory and constitutional provisions confer original jurisdiction of this Court over this matter.

3.      This Court also has supplemental jurisdiction over Reid Sagehorn's state law claim for defamation against defendant Police Chief Jeffrey Beahen under 28 U.S.C. § 1367(a) because Reid's defamation claim is so related to his civil rights claims, over which this Court has original jurisdiction, that they form part of the same case or controversy, as all of the alleged conduct arises from a common nucleus of operative facts.

4.      Reid Sagehorn brings these actions not only for money damages, but also for these express purposes: (1) for a declaration that the acts of the defendants were unconstitutional; (2) for a complete expungement of any reference to his suspension, expulsion, and forced withdrawal, as well as any events related to those actions, from his transcripts and student files; and (3) for changes in the policies and procedures of Rogers High School and Independent School District No. 728 so that the same does not happen to his siblings or any other student.

5.      School administrators and police officers are not censors of student speech at all times, in all places, and under all circumstances.

## PARTIES

6.      Reid Sagehorn was, at all times material herein, a citizen of the United States and a resident of the State of Minnesota.

7.      Reid Sagehorn was a minor during the events that give rise to this Complaint. Reid has since turned eighteen years old and brings these actions on his own behalf.

8.    Curt and Lori Sagehorn are Reid's parents.  Reid is the eldest of their four children.  His two sisters and brother are triplets and all recently completed their sophomore years at Rogers High School.

9.    Reid was an honor student at Rogers High School.  He was a member of the National Honor Society and a four-time recipient of the Scholastic Achievement Award.

10.    Reid was also a varsity lettermen in football, basketball, and baseball.  He was named captain of his basketball teams in 2012 and 2013 and his football team in 2013.

11.    Defendant Independent School District No. 728 ("ISD No. 728") is a public school district organized and operated under the laws of the State of Minnesota.

12.    Rogers High School is a traditional four-year high school within ISD No. 728.

13.    Defendant Roman Pierskalla is a party in his individual capacity as Principal of Rogers High School.  Principal Pierskalla acted as an agent or employee of ISD No. 728 at all relevant times.  Principal Pierskalla is a resident of the State of Minnesota and acted under color of state law at all relevant times.

14.    Defendant Mark Bezek is a party in his individual capacity as Superintendent of ISD No. 728.  Superintendent Bezek acted as an agent or employee of ISD No. 728 at all relevant times.  Superintendent Bezek is a resident of the State of Minnesota and acted under color of state law at all relevant times.

15.    Defendant Jana Hennen-Burr is a party in her individual capacity as Assistant Superintendent of ISD No. 728.  Hennen-Burr acted as an agent or employee of ISD No. 728 at all relevant times.  Hennen-Burr is a resident of the State of Minnesota and acted under color of state law at all relevant times.

16.     Defendant Jeffrey Beahen is a party in his individual capacity as Police Chief for Rogers Police Department.  At all times relevant, Chief Beahen supervised police officer Stephen Sarazin, also a defendant in this case.  Chief Beahen is a resident of the State of Minnesota and acted under color of state law at all relevant times.

17.     Defendant Stephen Sarazin is a party in his individual capacity as a police officer for Rogers Police Department.  At all times relevant, Officer Sarazin was the police liaison officer with Rogers High School and ISD No. 728.  At all times relevant, Officer Sarazin was under supervision, direction, and control of Chief Beahen.  Officer Sarazin is a resident of the State of Minnesota and acted under color of state law at all relevant times.

## FACTS

18.     Prior to February 2014, Reid Sagehorn had never been the subject of any disciplinary action by Rogers High School (with the exception of a parking ticket).

19.     Reid Sagehorn applied for early admission to North Dakota State University for Fall 2014.  He was accepted on October 11, 2013, pending successful completion of any course work taken prior to his enrollment at their college.

20.     In mid-January 2014, someone anonymously posted on a website titled "Roger confessions" the following: "did @R_Sagehorn3 actually make out with [name of female school teacher]".

21.     Reid Sagehorn did not create, operate, or maintain the "Roger confessions" website, nor did he participate in any way in the creation, operation, or maintenance of the "Roger confessions" website.

22.     Reid sarcastically posted: "Actually yeah".

23.     Reid's post was meant to be taken in jest.  This was a mistake.  He has since learned that sarcasm does not translate well over the Internet.  He never intended for anyone to believe his post.

24.     Reid's post was made: (1) outside of school hours, (2) off school grounds, (3) not at a school-sponsored event, and (4) without using any school property.

25.     Upon information and belief, a parent of a student contacted Rogers High School to express concern about the Internet postings in early February 2014.

26.     On the morning of February 3, 2014, Principal Pierskalla summoned Reid to a meeting in his office.  Officer Sarazin was also present in full police uniform.

27.     Principal Pierskalla and Officer Sarazin asked Reid about the "Roger confessions" website and the Internet post.  Reid told them that he authored the post, that it was meant to be sarcastic and not intended for anyone to believe the rumor.

28.     At their direction, Reid called his mother Lori and explained his Internet post in their presence.

29.     Principal Pierskalla ended the meeting by telling Reid and Lori that they would decide what disciplinary action they would impose.

30.     No one had talked to Reid about his post or even mentioned it to him at school from the time he made the post until Principal Pierskalla brought it up to him on February 3, 2014, at least a week after the post.

31.     On February 5, 2014, Reid went to school early with his sister that had class with the teacher that was the subject of the false rumor.  The teacher's office was located in the girls locker room.  Reid's intent was for his sister to go ask the teacher to come out of

her office and into the hallway so Reid could apologize to her face-to-face and explain that he meant the post to be sarcastic, and that he was sorry for any embarrassment it may have caused her.  The teacher was not in her office.  After waiting for fifteen minutes, Reid and his sister left to go to their first classes of the day.

32.     While in his first class, Principal Pierskalla summoned Reid to his office again. Officer Sarazin was again present in full police uniform.

33.     Principal Pierskalla told Reid they decided to suspend him for five school days and that he had to leave school immediately.

34.     Upon information and belief, the decision to suspend Reid for five school days was made collectively by Principal Pierskalla and Officer Sarazin.

35.     Upon information and belief, the decision to suspend Reid for five school days was done with the knowledge and approval of Superintendent Bezek, Assistant Superintendent Hennen-Burr, and Chief Beahen.

36.     Chief Beahen knew or should have known that Officer Sarazin was taking an active police role in the school's interaction with Reid and in suspending him for five days for his out-of-school speech, and Chief Beahen had the authority to prevent Officer Sarazin's conduct, yet failed to act.

37.     After they informed Reid of their decision to suspend him, Principal Pierskalla handed Reid a notice of suspension.  The notice was addressed to Curt and Lori Sagehorn and read in relevant part:

> **The grounds for suspension are:** Posting inappropriate comments online about a staff member.

**Briefly, the facts that have been determined are:** Reid wrote a post online about a staff member that he had "made-out" with the staff member.

**The testimony received was from** Reid.  He admitted to the posting.

**An administrative conference to determine the above was conducted before:** Roman Pierskalla, Principal, and Daniel Ohlgren Activities Director on February 3 at 1:30 PM.  Lori Sagehorn was contacted by phone.

**The plan of re-admission is:** Reid will be suspended from school on Wednesday, February 5 through Tuesday, February 11. (5 days OSS).  Pending the results of the investigation Reid may return to school on Wednesday, February 12.  During this period staff will continue the investigation.  Once the investigation is completed there may be additional days of suspension or possible expulsion.  While Reid is suspended he is not to be on school district property or at school events without explicit permission of school authorities.

Principal Pierskalla signed the notice.

38.      Attached to the notice was the "Recommended Consequence" section of Rogers High School Board Approved Handbook, page 35.  Highlighted was the offense titled "threatening, intimidating, or assault of a teacher, administrator or other staff member," and the recommended consequence of "3-10 day suspension; possible expulsion, police notification."

39.      Principal Pierskalla called Lori Sagehorn during the meeting and told her they were suspending Reid for five days because he "damaged a teacher's reputation," a fact still in question.

40.      No mention was made in the "Notice of Suspension," the "Recommended Consequences" attachment, or in the statements by any school or police official of any, let alone, a "substantial disruption" to the school environment.

41.     Reid's conduct in no way constituted "threatening, intimidating, or assault of a teacher, administrator, or other staff member," and any reasonable school official or police officer would understand that to be the case.

42.     All of the defendants suspended Reid, and conspired together to suspend Reid, in violation of his right to free speech under the First Amendment of the United States Constitution.

43.     Reid's out-of-school speech was not a "true threat" of physical violence, nor was it reasonably calculated to reach the school environment and so egregious as to pose a serious safety risk or other substantial disruption to that environment, *see D.J.M. v. Hannibal Public School District #60*, 647 F.3d 754 (8th Cir. 2011), and any reasonable school official or police officer would understand that to be the case.

44.     There was no disruption to class work or school activities as a result of Reid's post.

45.     Based on the Sagehorns' discussions with other parents, Rogers High School and ISD No. 728 have reached out to discipline at least two other students and perhaps more for out-of-school speech that was neither a "true threat" of physical violence nor reasonably calculated to reach the school environment and so egregious as to pose a serious safety risk or other substantial disruption to that environment.

46.     The defendants were motivated by and conducted themselves in accordance with a continuing, widespread, persistent pattern of unconstitutional conduct, *Mettler v. Whitledge*, 165 F.3d 1197 (8th Cir. 1999).

47.     Pursuant to the terms of his suspension, Reid did not attend class or school events, nor did he step foot on school property, during this five-day suspension period (February 5-11).  He did not attend or participate in any of his basketball games or practices. Nor did Reid attend any of his siblings extra-circular activities to show them his support as he often had.

48.     On the morning of February 10, 2014, Principal Pierskalla called Curt and Lori Sagehorn at their home.  He put them on speakerphone.  Officer Sarazin was again present.

49.     Principal Pierskalla  informed them they had decided to extend the suspension another five school days (February 12–18) and would be recommending expulsion through April 22, 2014 to the School Board.

50.     No mention was made by Principal Pierskalla, Officer Sarazin, or any other school official of any, let alone a "substantial disruption" to the school environment at this time.

51.     Upon information and belief, the decisions to suspend Reid for another five-day period and recommend expulsion through April 22, 2014 were made collectively by Principal Pierskalla and Officer Sarazin.

52.     Upon information and belief, the decisions to suspend Reid for another five-day period and recommend expulsion through April 22, 2014 were made with the knowledge and approval of Superintendent Bezek, Assistant Superintendent Hennen-Burr, and Chief Beahen.

53.     Chief Beahen knew or should have known that Officer Sarazin was taking an active police role in the school's personal interactions with the Sagehorns, and in suspending

Reid for another five school days and recommending expulsion through April 22, 2014.
Chief Beahen had the authority to prevent Officer Sarazin's conduct, yet failed to act.

54. Principal Pierskalla then informed Curt and Lori Sagehorn they would receive a notice in the mail that would include the expulsion hearing date.

55. Curt, Lori, and Reid Sagehorn received a letter in the mail entitled "Notice of Out of School Suspension -- Amended 2-10-14" and signed by Principal Pierskalla. The letter read in relevant part:

> **Dates of Suspension:** Beginning on **February 5, 2014, Reid Brazell Sagehorn** will be suspended for ten (10) school days. Supervised homework will be offered at a site selected by the District until an expulsion hearing is concluded and the School Board issues a decision. During the period of suspension, Reid Sagehorn may not enter onto any School District property except to attend his expulsion hearing. Reid Sagehorn is also prohibited from attending or participating in any District sponsored events or activities during the period of suspension, regardless of whether such events occur on or off school property.

> **Grounds for Out of School Suspension:** The independent grounds for suspension are as follows: (1) willful violation of any reasonable school board regulation; Rogers High School Board Approved handbook, Guidelines for Student Discipline page 35, threatening, intimidating, or assault of a teacher, administrator or other staff member.

> **Briefly, the facts that have been determined are:** On January 26, 2014 a post was made on an online website noting that the student had "made-out" with a staff member. Someone questioned the post about the student and the staff member and Reid commented, "Actually yes."

> **The testimony received was from:**
> **Reid** was interviewed by School Resource Officer, Stephen Sarazin, Rogers Police Department, Roman Pierskalla, Principal and Dan Ohlgren, Activities Director. Reid admitted that he had made the post.

> **An administrative conference to determine the above was conducted before:** Roman Pierskalla, Principal and Dan Ohlgren, Activities Director on February 3, 2014 at 1:30 p.m. The school explained the consequences for his action. Lori Sagehorn was contacted by phone.

**Readmission Plan:** The Administration is in the process of initiating expulsion proceedings.  If the School Board decides to expel Reid Brazell Sagehorn after a hearing, he may not attend school or any school sponsored events or activities in the District during the period of the expulsion.  If the School Board decides not to expel Reid, he will be permitted to enroll in the District immediately after the Board issues its decision.

56.   No mention was made in the "Notice of Out of School Suspension – Amended 2-10-14" of any, let alone a "substantial distribution" to the school environment.

57.   Attached to the letter was pamphlet entitled, "The Pupil Fair Dismissal Act," Minn. Stat. §§ 121A.40 – 121A.56.

58.   Minn. Stat. 121A.47, in part, provides: "No exclusion or expulsion shall be imposed without a hearing, unless the right to a hearing is waived in writing by the pupil and parent or guardian."  Subdivision 6 states:

**Impartial Hearer.**  The hearing shall take place before:

(1) an independent hearing officer;

(2) a member of the school board;

(3) a committee of the school board, or

(4) the full school board;

as determined by the school board.  The hearing shall be conducted in a fair and impartial manner.

59.   Superintendent Bezek received a copy of the letter dated February 10, 2014.

60.   All of the defendants suspended, and conspired to suspend, Reid an additional five school days in violation of his right to free speech under the First Amendment of the United States Constitution.

61.     Pursuant to the terms of his suspension, Reid did not attend class or school events, nor did he step foot on school property, during this additional five-day suspension period (February 12-18).  He again did not attend or participate in any of his basketball games or practices.  Nor did Reid attend any of his siblings extra-circular activities to show them his support as he often had done.

62.     Upon hearing the decision to suspend Reid and additional five school days and recommend expulsion until April 22, 2014, Curt and Lori Sagehorn expressed to Principal Pierskalla their disapproval of the decision and their feeling that the punishment greatly exceeded Reid's mistake in judgment.  They expressed that they felt the defendants were abusing their power.

63.     Principal Pierskalla became angry that they questioned his authority and judgment.  He became so angry that one of the assistant principals had to step in to communicate with the Sagehorns.  Principal Pierskalla then represented to the Sagehorns that the decision was final.

64.     The next day, February 11, 2014, Lori Sagehorn sent an email to Superintendent Bezek: (i) requesting an open hearing, (ii) asking for where in the student handbook conduct like this warrants a 10-week expulsion, (iii) requesting an in-person meeting with Superintendent Bezek to discuss the matter, and (iv) requesting that the district interview teachers and coaches who know Reid so they can get a complete picture of who he is before expelling him.

65.     Superintendent Bezek responded a few hours later telling them he is familiar with aspects of Reid's situation, that he is currently out of town, but that Assistant

Superintendent Hennen-Burr would assist them in his absence, although he will try to make himself available by email.

66.     Shortly thereafter, Lori Sagehorn replied to Superintendent Bezek:

Mr. Bezek,

Thank you for your reply.  I do want to meet when you return and I do want to talk to Dr. Hennen-Burr, as the situation is such that is extremely concerning to us, and I do not feel at all that the severity of the punishment is justified and want to understand clearly and with district guidelines how such a punishment fits the offense.  The fact that my sons entire 3.5 years at RHS has been a spotless record and full of leadership, scholastic and athletic accomplishments and is well liked and respected by all teachers, staff and fellow students and poses no threat to anyone in any way.

I have a very difficult time understanding after he has now spent five days at home teaching himself as he has done his homework, how a school district would find an additional five days plus a possible expulsion until April 22nd to be in anyones best interest or justified.  I am asking you to please look into this as soon as possible, spend time talking to the teachers and coaches who know Reid very well and understand that the 17 year old boy [ ] should be in school during his last semester before leaving for college, learning from teachers and not trying to do this on his own.

I need to have this addressed and looked into in great depth as soon as possible and not allow this to continue to drag on like this.

Thank you

67.     About an hour after her reply, Officer Sarazin called Lori Sagehorn and left her a voicemail telling her that he forwarded the police reports to the Hennepin County Attorney's Office for their review and decision as to whether to charge Reid with any crimes arising out of this situation.  Officer Sarazin took these actions under the color of law.

68.     Upon information and belief, Officer Sarazin forwarded the police reports to the Hennepin County Attorney's Office at the direction of Chief Beahen and: (i) with the knowledge and consent of Principal Pierskalla, Superintendent Bezek, and Assistant

Superintendent Hennen-Burr; (ii) for the very purpose of trying to justify and to further the defendants' collective decision to suspend and expel Reid Sagehorn; and (iii) with the intent to intimidate Reid, Curt, and Lori Sagehorn into waiving a hearing on the expulsion.

69.     Reid Sagehorn's conduct did not constitute a crime.  Nor would it be reasonable for a trained officer to believe that Reid's conduct constituted a crime.

70.     In due course, the Hennepin County Attorney's Office reviewed the police reports and determined that there was "insufficient evidence" to charge Reid Sagehorn with any crime.

71.     Lori Sagehorn contacted Assistant Superintendent Hennen-Burr and set up a meeting for the morning of February 14, 2014.

72.     The meeting took place at the office of ISD No. 728 in Elk River.  Assistant Superintendent Hennen-Burr was present in person and Superintendent Bezek was present by telephone.  Also present were Curt, Lori, and Reid Sagehorn.

73.     The Sagehorns again expressed their view that the punishment was both excessive and unwarranted.

74.     Superintendent Bezek and Assistant Superintendent Hennen-Burr disagreed and represented to the Sagehorns that they supported the 10-day suspension and expulsion set to run until mid-April 2014.

75.     Superintendent Bezek and Assistant Superintendent Hennen-Burr told the Sagehorns the expulsion hearing was set for February 19, 2014.  They told the Sagehorns they should have received notice of the proposed expulsion by mail.

76.     The Sagehorns had not yet received notice of the date of the hearing so Assistant Superintendent Hennen-Burr retrieved a copy of the notice letter and gave it to the Sagehorns -- retitled "Amended Notice" dated February 13, 2014.

77.     The "*Notice of Proposed Expulsion of Reid Brazell Sagehorn*" read in relevant part:

This letter constitutes notice to you that the Administration of Independent School District No. 728, Elk River (hereinafter the "District") proposes that **Reid Brazell Sagehorn** be expelled from the District's schools from **February 5, 2014** until **April 17, 2014** pursuant to the Minnesota Pupil Fair Dismissal Act (Minnesota Statutes sections 121A.40 to 121A.56). A copy of the Pupil Fair Dismissal Act is enclosed for your review.

The independent statutory grounds for the proposed expulsion are as follows:

1.  Willful violation of reasonable School Board regulations; Rogers High School Board Approved handbook, Guidelines for Student Discipline page 35, threatening, intimidating, or assault of a teacher, administrator or other staff member.

2.  Willful conduct that significantly disrupts the rights of others to an education, or the ability of school personnel to perform their duties, or school sponsored extracurricular activities.

. . .

On January 26, 2014, **Reid Sagehorn** engaged in willful conduct that violated our student handbook with specific regard to threatening, intimidating, or assault of a teacher, administrator or other staff member. . . .

A hearing on the proposed expulsion of **Reid Sagehorn** is scheduled to be held before an independent hearing officer beginning at **9:00 am on Wednesday, February 19, 2014**. The hearing will be held in *ISD 728 District Office located at 815 Hwy 10, Elk River, MN.* The administration is proposing that **Reid** be expelled from the schools of Independent School District No. 728 from **February 5, 2014** until **April 17, 2014.**

. . .

The hearing will be held as scheduled unless you waive, in writing, your right to a hearing. If you waive your right to a hearing, the Administration will take its recommendation directly to the School Board for official action. Thus, by

waiving your right to a hearing, you are waiving your right to contest the Administration's recommendation of expulsion. . . .

After the hearing officer issues written findings, conclusions, and a recommendation, the School Board will meet to decide whether to accept the findings, conclusions, and recommendation.

78.     There was no discussion about how or in what respect Reid's actions significantly disrupted the school environment.

79.     Reid's conduct in no way constituted the newly-stated grounds for his expulsion: "wilful conduct that significantly disrupts the rights of others to an education, or the ability of school personnel to perform their duties, or school sponsored extracurricular activities."

80.     Any disruption to the school environment was a result of the excessive punishment and unconstitutional actions of the defendants, rather than the speech itself. This is illustrated by the cartoon published in the Star Tribune on February 23, 2014:



81.     After handing them the notice, Superintendent Bezek and Assistant Superintendent Hennen-Burr represented to the Sagehorns they could have a hearing in front of a hearing officer to contest the expulsion.  While all of the possibilities may have been mentioned, it was made very clear that the School Board, the ultimate decision-maker in the case, will agree with the expulsion.  They represented to the Sagehorns a hearing would thus be meaningless and the outcome was really pre-ordained.

82.     Upon information and belief, the aforementioned representations were made with the knowledge and approval of Principal Pierskalla, Chief Beahen, and Officer Sarazin.

83.     These representations eviscerated Reid Sagehorn's protections under Minnesota's Pupil Fair Dismissal Act, including his right to a hearing "conducted in a fair and impartial manner" <u>before</u> the School Board makes its decision.

84.     In addition, Superintendent Bezek and Assistant Superintendent Hennen-Burr represented to the Sagehorns that the expulsion punishment could be increased to the remaining school year if the Sagehorns requested a hearing.  This threat is significant.

85.     Superintendent Bezek and Assistant Superintendent Hennen-Burr represented to the Sagehorns at the meeting that any expulsion, particularly one to the end of the year, would likely cause North Dakota State University to retract its acceptance of Reid for the Fall 2014.  Further draconian consequences were implied and understood by the Sagehorns.

86.     Upon information and belief, the threat to increase the expulsion penalty through the end of the school year if Reid requested a hearing was made with the knowledge and approval of Principal Pierskalla, Chief Beahen, and Officer Sarazin.

87.     Defendants Bezek and Hennen-Burr represented to the Sagehorns their only real option to avoid expulsion on Reid's permanent file was to "voluntarily" withdraw.  They then presented the Sagehorns with a pre-drafted withdrawal document.

88.     The document was addressed to "Parents of Reid Sagehorn" from Assistant Superintendent Hennen-Burr and dated February 14, 2014.  The document reads as follows:

The following are agreed upon:

1. We acknowledge receipt of the Notice of Proposed Expulsion dated February 13, 2014.
2. We have had ample opportunity to review the Notice.
3. We understand the contents of the Notice.
4. The Notice of Proposed Expulsion dated February 13, 2014 accurately sets forth the facts which support the proposed expulsion.
5. We have read and understand the forgoing facts regarding the proposed expulsion of Reid Sagehorn.
6. The following sets forth the agreement we have reached with the school administration regarding the resolution of this matter:
    *We agree that Reid will be withdrawn from school from February 14, 2014 – April 17, 2014.

*We agree to provide academic programming through homebound
  instruction.
*Withdrawal will be noted on Reid attendance in parent portal.
  Expulsion will not be noted anywhere in his permanent file.
*Reid cannot be on school property at any time.
7. We understand the terms of the proposal and agree to abide by the terms.

The document is signed by Curt, Lori, and Reid Sagehorn and by Assistant Superintendent

Hennen-Burr.

89.     Curt, Lori, and Reid Sagehorn each signed the withdrawal document based on

the representations by defendants that the School Board would act in such a way that

defendants' proposed expulsion was pre-ordained and thus any hearing would be

meaningless, and, therefore, the only way to avoid expulsion on Reid's permanent file was to

sign the withdrawal document.

90.     Curt, Lori, and Reid Sagehorn each also signed the withdrawal document

based on the threat that the expulsion punishment would likely have been increased to the

entire remaining school year if the Sagehorns had requested a hearing.

91.     Curt, Lori, and Reid Sagehorn did not voluntarily sign the document waiving

Reid's right to an impartial and meaningful hearing.

92.     The defendants coerced the Sagehorns into signing the withdrawal document

by, among other things, trumping up charges erroneous on their face and backing those

trumped up charges with a series of punishments, each worse than the one before it -- *i.e.*,

five-day suspension, ten-day suspension, ten-week expulsion, expulsion through the

remaining school year, as well as cancelled admission to North Dakota State University, and

the possibility of a felony conviction.

93.     The Sagehorns were never afforded a meaningful opportunity to be heard to contest the suspensions and expulsion.

94.     Upon information and belief, all of the defendants conspired to expel and force Reid to withdrawal from Rogers High School – they were acting in concert at all times.

95.     The defendants expelled and forced Reid to withdrawal in violation of his right to free speech under the First Amendment to the United States Constitution.

96.     The defendants expelled and forced Reid to withdrawal in violation of his right to due process under the Fourteenth Amendment of the United States Constitution.

97.     Curt, Lori, and Reid Sagehorn met again with Superintendent Bezek on February 18, 2014, and proposed the district withdraw Reid's expulsion and that, in exchange, Reid would formally speak to the student body about the pitfalls and troubles of communicating on social media, how sarcasm does not translate over the Internet, and that students need to think before they communicate online.  The defendants never accepted Reid's proposal.

98.     On or around February 19, 2014, Reid wrote a letter to the female teacher apologizing for any embarrassment his actions may have caused her.  Reid's sister delivered the letter on his behalf.

99.     Reid's suspensions and proposed expulsion reached the attention of his fellow students, their parents, the City of Rogers, and ultimately the news media – local, national, and international.  The news media ran daily stories about the excessive punishment given to Reid by the defendants and the community's reaction to it.

100.    To buttress the school's position, agreed to by his officer, Police Chief Beahen regularly, publicly, and intentionally commented to the news media about Reid's conduct, stating "that's a crime" and ominously adding that Reid "could face felony charges." Chief Beahen made numerous other similar intentional public comments about Reid's conduct being criminal. His comments that Reid's conduct could rise to felony level were meant to be and were indeed widely reported by the public media outlets, not merely on social media websites. An adult and sitting police chief, assumed to be an expert in such matters, made these statements as unqualified statements of fact and law, which, when uttered, were untrue. They certainly were not, nor meant to be, juvenile or sarcastic.

101.    Chief Beahen recklessly and falsely publicly stated that Reid's conduct was like "crying or yelling 'Fire!' in a movie theater or saying 'I got a bomb!' on a plane."

102.    Reid was a minor at the time of Chief Beahen's comments and no effort was made to conceal or protect Reid's identity.

103.    These comments by Chief Beahen were false when made and were made with reckless, wilful, and malicious disregard for the truth.

104.    It was not until after the Hennepin County Attorney's Office announced Reid committed no crime that Chief Beahen said, "I admitted I erred."

105.    Upon information and belief, Chief Beahen made these comments (i) with the knowledge and approval of all the defendants, and (ii) did so in an attempt to further and justify Reid's suspensions and expulsion, and (iii) in an attempt to combat the negative attention the defendants were receiving in the community and in the news media.

106.    As a result, Reid Sagehorn's name is forever linked with the term "felony," as any Google search will confirm. This has destroyed his reputation and will be a detriment to his ability to find employment during and after college.

107.    These statements to the public damaged Reid's reputation and violated his liberty interest guaranteed to him by the United States Constitution.

108.    Reid has also lost his right to remain anonymous and be forgotten, as any Google search will also confirm.

109.    Reid subsequently was forced to enroll in a neighboring school district. He graduated on May 30, 2014.

110.    As a direct and proximate result of the unconstitutional acts of the defendants, Reid suffered mental anguish, damage to his reputation, and suffered adverse consequences socially, educationally, and vocationally.

111.    Reid missed the last six basketball games of his high school career, including the playoffs. Reid's captainship was stripped from him. Reid also became ineligible for any post-season basketball awards. He never received a letter for his senior year basketball.

112.    Reid could not participate in baseball his senior year. Rogers High School would not let him play on their team, nor was he allowed to play for the school district to which he subsequently enrolled in accordance with Minnesota High School League rules.

113.    Reid was barred from any Rogers High School events for the period between February 5, 2014 and April 17, 2014.

114.    Reid was forced to change schools with four months remaining of his senior year -- one of the most exciting and carefree times in a young person's life.

115.    Reid was barred from graduating with his friends and classmates of three and a half years or longer.  He sat in the back of the gymnasium and watched as they all received their diplomas.

116.    Reid demands a jury trial on all issues of fact herein.

## COUNT ONE
## FIRST AMENDMENT VIOLATIONS
### 42 U.S.C. § 1983
### Against All Individual Defendants

117.    Plaintiff Reid Sagehorn realleges and incorporates by reference herein each and every allegation contained in each paragraph above as though fully set forth herein.

118.    Reid's out-of-school, sarcastic reply constitutes speech protected by the First Amendment to the United States Constitution and applied to the States through the Fourteenth Amendment to the United States Constitution.

119.    Reid's reply was not a true threat, nor was it reasonably calculated to reach the school environment and so egregious as to pose a serious safety risk or other substantial disruption in that environment.

120.    Any disruption that occurred in the school environment was the result of the defendants' overreaction to Reid's speech and violation of his constitutional rights, rather than the speech itself.

121.    The individual defendants disciplined and conspired to discipline Reid for his speech.

122.    The individual defendants did not have a constitutionally justified reason to discipline Reid for his speech.

123.    Acting intentionally and under the color of state law, the individual defendants violated Reid's clearly established rights under the First Amendment to the United States Constitution by punishing Reid for his constitutionally protected speech.  This constitutes a violation of 42 U.S.C. § 1983.

124.    The individual defendants acted with reckless or callous indifference to Reid's federally protected rights.

125.    As a direct and proximate result of the acts and omissions of all of the individual defendants, Reid suffered mental anguish, damage to his reputation, and suffered adverse consequences socially, educationally and vocationally, and he was thereby damaged in an amount to be determined by a jury.

126.    Punitive damages are available against the individual defendants and are hereby claimed as a matter of federal common law, *Smith v. Wade*, 461 U.S. 30 (1983).

127.    Reid is entitled to recovery of his costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

### COUNT TWO
### SUPERVISORY LIABILITY
### 42 U.S.C. § 1983
### Against Police Chief Jeffrey Beahen

128.    Plaintiff Reid Sagehorn realleges and incorporates by reference herein each and every allegation contained in each paragraph above as though fully set forth herein.

129.    Defendant Police Chief Jeffrey Beahen is individually liable under 42 U.S.C. § 1983 because he directly participated in the constitutional violations, and because he failed to supervise his subordinate police officer/police liaison Stephen Sarazin who also caused the constitutional violations, *see Brockinton v. City of Sherwood*, 503 F.3d 667, 673 (8th Cir. 2007).

130.    Chief Jeffrey Beahen, with callous and reckless indifference to the rights of students, failed to properly supervise, instruct, and train police officer/police liaison Stephen Sarazin.

131.    Chief Beahen's inactions amount to reckless disregard, deliberate indifference to, and tacit authorization of Officer Sarazin's violations of Reid's constitutional rights.

132.    As a direct and proximate result of the acts and omissions of Chief Beahen, Reid suffered mental anguish, damage to his reputation, and suffered adverse consequences socially, educationally and vocationally, and he was thereby damaged in an amount to be determined by a jury.

133.    Punitive damages are available against Chief Beahen and are hereby claimed as a matter of federal common law, *Smith v. Wade*, 461 U.S. 30 (1983).

134.    Reid is entitled to recovery of his costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

**COUNT THREE**
**UNCONSTITUTIONAL CUSTOM AND PATTERN OF PRACTICE**
**42 U.S.C. § 1983**
**Against Independent School District No. 728**

135.    Plaintiff Reid Sagehorn realleges and incorporates by reference herein each and every allegation contained in each paragraph above as though fully set forth herein.

136.    ISD No. 728, itself, subjected Reid Sagehorn to a deprivation of his clearly established rights or caused Reid Sagehorn to be subjected to such deprivation, and is thereby liable under *Monnell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978).

137.    At all times relevant herein, defendants Principal Pierskalla, Superintendent Bezek, Assistant Superintendent Hennen-Burr were employees or agents of ISD No. 728.

138.    These district defendants disciplined Reid Sagehorn for out-of-school speech in violation of his right to free speech under the First Amendment of the United States Constitution.

139.    At that time, defendant ISD No. 728 maintained a custom and pattern of practice of infringing on student's right to free speech – that being, reaching out to discover, monitor, and punish any type of out-of-school speech, even speech that does not constitute a "true threat," nor is reasonably calculated to reach the school environment and so egregious as to pose a serious safety risk or other substantial disruption in that environment.

140.    This custom and pattern of practice was continuing, widespread, and persistent, and it was the driving force behind the district defendants' discipline of Reid Sagehorn and violation of his constitutional rights.

141.    ISD No. 728 knew of this custom and pattern of practice by the district defendants and, under color of state law, either tacitly authorized the conduct or was deliberately indifferent to the conduct.

142.    As a direct and proximate result of the custom and pattern of practice of defendant ISD No. 728, plaintiff Reid Sagehorn suffered mental anguish, damage to his reputation, and suffered adverse consequences socially, educationally and vocationally, and he was thereby damaged in an amount to be determined by a jury.

143.    Reid is entitled to recovery of his costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

**COUNT FOUR**
**FOURTEENTH AMENDMENT VIOLATIONS**
**42 U.S.C. § 1983**
**Against All Individual Defendants**

144.    Plaintiff Reid Sagehorn realleges and incorporates by reference herein each and every allegation contained in each paragraph above as though fully set forth herein.

145.    Education is a fundamental right and a property interest protected by the Fourteenth Amendment to the United States Constitution.  Reid has a constitutionally cognizable property interest in, and a fundamental right to, an education under *Goss v. Lopez*, 419 U.S. 565, 574 (1975), and Article XIII (Education Clause) of the Minnesota Constitution.

146.    At a minimum, due process requires that any deprivation of property by adjudication by preceded by notice and a meaningful opportunity to be heard appropriate to the nature of the case.

147.    Expulsion is action taken by a school board to prohibit an enrolled student from further attendance for up to twelve (12) months from the date the student is expelled.

148.    Reid was deprived a meaningful opportunity to be heard to contest his suspensions and expulsion.

149.    By representing to the Sagehorns that the School Board, the ultimate decision-maker in this case, will act in such a way that expulsion is pre-ordained, the defendants deprived Reid Sagehorn his right to a meaningful hearing guaranteed by the Due Process Clause of the Fourteenth Amendment.

150. By threating to increase the expulsion penalty through the entire school year if the Sagehorns requested a hearing, the defendants deprived Reid of his right to due process under the Fourteenth Amendment to the United States Constitution.

151. Reid was prejudiced by the defendants' violation of his constitutional rights. His conduct in no way constituted any of the defendants' stated grounds for suspension and expulsion.

152. In connection with the deprivation of his right to a public education, the defendants injured Reid's reputation and violated his liberty interest, *Paul v. Davis*, 424 U.S. 693 (1976).

153. The above-described conduct of defendants was intentional and made under color of state law and constitutes a violation of 42 U.S.C. § 1983.

154. The defendants acted with reckless or callous indifference for Reid's federally protected rights.

155. As a direct and proximate result of the acts and omissions of all of the defendants, Reid suffered mental anguish, damage to his reputation, and suffered adverse consequences socially, educationally and vocationally, and he was thereby damaged in an amount to be determined by a jury.

156. Punitive damages are available against the individual defendants and are hereby claimed as a matter of federal common law, *Smith v. Wade*, 461 U.S. 30 (1983).

157. Reid is entitled to recovery of his costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

## COUNT FIVE
## DEFAMATION
### Against Police Chief Jeffrey Beahen

158.    Plaintiff Reid Sagehorn realleges and incorporates by reference herein each and every allegation contained in each paragraph above as though fully set forth herein.

159.    Defendant Police Chief Jeffrey Beahen made defamatory statements by knowingly, recklessly, and maliciously stating that Reid's conduct was criminal and punishable by a felony.

160.    Chief Beahen's statements were false.

161.    These defamatory statements about Reid Sagehorn were made to the Star Tribune newspaper and other media outlets and were subsequently published by media outlets on a national and international scope.

162.    As a direct and proximate result of Chief Beahen's acts, Reid Sagehorn suffered harm to his reputation and standing in the community, mental distress, shame, humiliation, and embarrassment and was damaged in an amount to be determined by a jury.

163.    Chief Beahen's defamatory statements were made with deliberate disregard for Reid Sagehorn's rights – a minor at the time.

WHEREFORE, plaintiff Reid Sagehorn prays for judgment against defendants as follows:

1.    As to Count One, a money judgment against defendants Pierskalla, Bezek, Hennen-Burr, Beahen, and Sarazin, in their individual capacities, for compensatory and punitive damages in an apportioned amount to be determined by a jury.  Plaintiff also

demands costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988 and

prejudgment interest;

2.      As to Count Two,  a money judgment against defendant Beahen, in his

individual capacity, for compensatory and punitive damages in an amount to be determined

by a jury.  Plaintiff also demands costs, including reasonable attorneys' fees, under 42 U.S.C.

§ 1988 and prejudgment interest;

3.      As to Count Three, a money judgment against defendant Independent School

District No. 728 for compensatory damages in an amount to be determined by a jury.

Plaintiff also demands costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988

and prejudgment interest;

4.      As to Count Four, a money judgment against defendants Pierskalla, Bezek,

Hennen-Burr, Beahen, and Sarazin, in their individual capacities, for compensatory and

punitive damages in an apportioned amount to be determined by a jury.  Plaintiff also

demands costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988 and

prejudgment interest.

5.      As to Count Five, a money judgment against defendant Jeffrey Beahen for

compensatory damages in an amount to be determined by a jury, together with his costs and

prejudgment interest;

6.      An Order mandating complete expungement of any reference to Plaintiff Reid

Sagehorn's suspension and expulsion and any of the events that relate to it from his

transcripts and student files in defendants' possession, custody or control.

7.    For changes in the policies, procedures, and practices of Rogers High School and Independent School District No. 728 of disciplinary students for out-of-school speech that does not constitute "true threats," nor is reasonably calculated to reach the school environment and so egregious as to pose a serious safety risk or other substantial disruption in that environment.

8.    For such other and further relief as the Court deems just and equitable.

**GASKINS BENNETT BIRRELL SCHUPP, L.L.P.**

Dated:   June 17, 2014   .          s/ Robert Bennett
                                    Robert Bennett, #6713
                                    Paul C. Dworak, #391070
                                    333 South Seventh Street, #3000
                                    Minneapolis, MN  55402
                                    Telephone: 612-333-9500

                                    -and-

**JOSEPH S. FRIEDBERG, CHARTERED**

                                    Joseph S. Friedberg, #32086
                                    701 Fourth Avenue South, #300
                                    Minneapolis, MN  55415
                                    Telephone: 612-339-8626

                                    -and-

**RON ROSENBAUM, LLC**

                                    Ron Rosenbaum, #163478
                                    1071 Palace Avenue
                                    St. Paul, MN  55105
                                    Telephone: 612-414-0327

*Attorneys for Plaintiff Reid Sagehorn*